Decided December 28, 1983

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

LYDIA CAMACHO ROMISHER,) CIVIL ACTION NO. 83-401
 Plaintiff, )
 )
 vs. ) PERMANENT INJUNCTION
 ) AND
MARIANAS PUBLIC LAND ) ORDER FOR RELEASE OF SECURITY DEPOSIT
CORPORATION, et al., )
 )
 Defendants. )
_____)

On November 25, 1983, the court granted a preliminary
injunction, which enjoined the Marianas Public Land Corporation
(MPLC) from disbursing any funds it received from the United
States of America, which funds were for the lease of certain
lands on Tinian Island. The basis of the grant of the
preliminary injunction was the improper, and hence void,
vote of the Board.of Directors of MPLC approving the payment
of funds.

At the hearing on whether the preliminary injunction
should be made permanent, both sides rested on the basis
of the record and Com.R.Civ.Pro. Rule 65(a)(2). Thus the

grounds upon which the preliminary injunction was granted remains exactly the same and a permanent injunction shall enter.

The plaintiff, having prevailed, is entitled to the return of her security deposit and the Clerk of Court shall return her deposit forthwith.

Counsel for the plaintiff requests attorney fees on a "common benefit" theory though no Commonwealth statute exists to give authority to the court to grant fees. There has been supplied the court a portion of a treatise by Spieser and counsel has provided certain federal cases which discuss or apply the theory. Without delving into detail of the treatise and the factual circumstances of the cases cited, the court declines to award fees under the theory espoused.

Plaintiff's suit was filed on a rather narrow and limited ground and this was the improper vote due to the conflict of interest of two MPLC Board Members who voted to approve the payment of money to certain Tinian landowners. The complaint, written points and authorities, and oral argument of plaintiff all pertained to the illegal vote and the relief requested was to, in effect, send the matter back for another vote by an "untainted" MPLC Board. At no time did the plaintiff make an issue of whether the actual figure

of $5.00 a square meter for the acquisition of the land was unreasonable. Indeed, plaintiff's counsel, at argument on the Temporary Restraining Order and Preliminary Injunction, took the position that all the plaintiff requested was to void the vote of the Board, and send it back for a new vote and if the Board voted for $5.00 or more per square meter, that was of no concern to the plaintiff. It was only upon the court's questioning the authority of MPLC to make any disbursement of funds that plaintiff jumped on any "common benefit" band wagon. This court does not mean to denigrate plaintiff's action in bringing this suit. On the contrary, the court applauds her concern as a citizen and trusts that a long lasting impression has been made to maintain honesty in government and set a minimum standard of ethics for those in official positions.

At this point in time, it cannot be concluded that plaintiff has, in effect, provided a common benefit to the citizens of the Commonwealth in monetary terms as contrasted with ethical considerations. The reason for this is that eventually money belonging to the citizens of the Commonwealth must be paid to the private landowners on Tinian. This may turn out to be more than $5.00 a square meter. Whether those funds come from appropriated funds, the lease money paid by the United States or from interest thereon, the bottom line is that it is paid from money to benefit the

plaintiff and others situated similarly. It is only speculation that the end result of plaintiff's action will reap a common benefit and that a fund has been preserved. Plaintiff states now that all $33,000,000 received from the United States should be immediately transferred to the Marianas Public Land Trust. Thus, the argument follows, all $33,000,000 has been preserved and the common benefit theory applies.

This begs the question since either the legislature must appropriate funds to pay the Tinian landowners or, as suggested, interest from the trust funds which is to be deposited into the Government's general account pursuant to Article XI, Section 6 d), could be used to pay the landowners. Should the amount to be paid be $5.00 or more per square meter, there simply is no preservation of a common fund and since this condition is not met, the common benefit exception for the granting of attorney fees is not applicable even if the court was prone to exercise its discretion and grant fees.

The above issues are fairly easily disposed of but the remaining problems to resolve in this matter present issues of some magnitude.

The court previously raised, sua sponte, the authority of MPLC, in the first instance, to acquire land from the private landowners on Tinian and the right to disburse funds

to them. MPLC was invited to demonstrate that they had that authority and a memorandum of points and authorities was filed.

MPLC cannot point to specific constitutional or statutory authority for the actions it wishes to take. However, the argument is made that MPLC is the successor to the Marianas Public Land Corporation entity established by District Legislature Act 100-1975. This latter entity was formulated as the body to receive public lands pursuant to the provisions of Section 6 of Secretarial Order No. 2969.[1] This Corporation

---

[1] A brief history needs to be recited at this point. Prior to 1975, public lands were held by the Trust Territory Government as the administering agency of the Trust Territory of the Pacific Islands. By 1975, the desire of the people of Micronesia to have more control over public lands resulted in Secretarial Order 2969. The Congress of Micronesia was unable to agree on enabling legislation to affect the transfer of public lands so the Secretary of Interior provided by Secretarial Order 2969 that each Administrative District of the Trust Territory could, by its district legislature, designate a legal entity to receive public lands from the Trust Territory Government. The Northern Mariana Islands, as one of the administrative districts, enacted through its legislature, Act 100-1975, and the Corporation formed thereby received the public lands pursuant to Secretarial Order 2969.

did not possess powers of eminent domain or land acquisition rights. It was terminated as a legal entity when the Constitution of the Northern Mariana Islands was adopted and which established MPLC in Article XI, Section 4. Section 1 and 3 of Article XI of the Constitution automatically vested the public lands previously held by the former corporation in MPLC. In a sense then, MPLC was the successor to the former corporation. Thus, it is argued MPLC steps into the shoes of the former entity for the purposes of carrying out the provisions of the Technical Agreement, Part I, subparagraphs 2 and 3 and 5 A(5).

The pertinent parts of those subparagraphs read:

> 2. Acquisition. The Government of the Northern Mariana Islands or the legal land entity established by the Marianas District Legislature to receive and administer public lands in the Northern Mariana Islands, immediately upon request, will execute the lease for the lands being conveyed to the United States Government as described in paragraph 1, above, with the duly authorized representatives of the United States under the terms set forth in Section 803 of the Covenant.
>
> . . . . .
>
> 3. Settlement of Claims and Encumbrances. Lands leased by the United States Government defined in paragraph 1, above, are subject to the lease of the Micronesian Development Corporation, which will be allowed to continue in accordance with its terms. All other encumbrances on or any adverse possession of lands described in paragraph 1,

above, will be removed and all existing claims will be settled by the Government of the Northern Mariana Islands or by the legal entity at no additional cost to the United States Government. The United States Government will, however, pay all Title II benefits due under the Uniform Relocation and Real Property Acquisition Policies Act of 1970.

. . . . .

(5) Military Maneuver Area on Tinian --Present Private Owners. There are 38 deeded homestead parcels and six pending homesteads in the maneuver area as indicated in Exhibit A. The Government of the Northern Mariana Islands or the legal entity will acquire the land at no additional cost to the United States Government and will provide an opportunity for the owners of these homesteads who may be eligible for new homesteads as a result of their displacement to exchange their land with comparable lands outside the military area. The homestead owners will be fully compensated by the Government of the Northern Mariana Islands or by the legal entity if they do not choose this exchange and will, in addition, receive from the United States Government whatever relocation compensation and assistance to which they would be entitled under United States law. After this land now held as homesteads is acquired by the United States Government by lease from the Government of the Northern Mariana Islands or from the legal entity the United States Government will, on a case-by-case basis and on request, lease it back to those former owners who wish to continue to farm the land for periods of five years at one dollar per acre per year, renewable with United States approval for additional periods of up to five years. Approximately 503 acres (204 hectares) are involved in this category.

Consequently, MPLC asserts that the Covenant and Constitution intended to give MPLC the power and authority to negotiate and acquire the private land interests on Tinian Island and to disburse funds for the acquisition.

The flaws in the position of MPLC are readily apparent. The legal entity referred to in the Technical Agreement is no longer in existence. Even if one is to give full successor status to MPLC it did not inherit any acquisition or purchase rights under the provisions of Act 100-1975. Therefore the only presumable source of acquisition and disbursement power for MPLC must be derived from the Covenant. Yet the latter document provides, first of all, an alternate entity in the acquisition process and that alternative is the Government of the Northern Mariana Islands. The Covenant was drafted and signed on February 15, 1975 and therefore the drafters of the Constitution had the Covenant in hand when Articles XI and XIII were drafted and subsequently approved by the voters of the Commonwealth. Article XI is silent as to any acquisition powers of MPLC. As far as disbursal of money received by it for public lands, it is explicit that it shall promptly disburse the money to the Marianas Public Land Trust less "reasonable expenses of administration."

The intent that MPLC wishes the court to read into Article XI is not only absent, but it fails because of

contrary expressed directions in Article XI and the inclusion of Article XIII which specifies that the Commonwealth shall have the power of eminent domain as provided by law. No law, and certainly not the Constitution, has given this power to MPLC. Simply put the acquisition of private interests in land and the disbursement of trust funds for that purpose are just not within the Constitutional powers of MPLC and neither the Covenant nor the Technical Agreement give those powers to MPLC. MPLC further argues that the Lease and Land Acquisition Agreements with the United States were signed by Executive and Legislative Branch officials as well as MPLC and this indicates that it was the intent that MPLC be the entity to acquire the private interests of the Tinian landowners. Exactly how the lease agreement is to grant MPLC powers that it legally doesn't possess is not discussed and this argument is summarily rejected.

Almost one year has elapsed since the lease has been signed with the United States and the money paid over but presumably some of this time has been spent productively in the garnering of information and appraisals so that there can be an expeditious resolution of this matter.

The remaining question is the procedure to be followed in light of the fact that MPLC cannot acquire the private interests. Both sides to this litigation state that in view

882

of the court's ruling on the status of MPLC all $33,000,000 should be paid over to the Marianas Public Land Trust (MPLT).[2]

This would create two major problems. First, the Land Acquisition and Deferred Payment Agreement entered into by the Government and the United States established a joint account in which $6,565,800 is placed in escrow to assure funds are available for the acquisition of the private interests on Tinian.

The account is held in the joint names of the United States and MPLC. (See Articles 3, 4, and 5 of the Land Acquisition and Deferred Payment Agreement). The purpose for such an escrow account is clear. In this way the United States will be assured that funds are available for the acquisition of the private interests.

 This court has no authority or power to order the United States to release the funds.

Second, should all $33 million dollars be placed in the MPLT, a fiscal problem occurs in that the Commonwealth would either have to appropriate sufficient sums to pay for the private interests or wait until enough income is earned and

---

2
 MPLC, in its memorandum, represents that it has committed sizeable sums for homestead projects and asserts that these sums should be kept by MPLC as "reasonable expenses of administration" under Article XI, Section 5(g) of the Constitution.

deposited into the general fund by the MPLC pursuant to Article XI, Section 6 d). Neither solution is conducive to an early settlement and resolution of the private interests of the Tinian landowners.

 From what has been said above and in the court's prior opinion granting the preliminary injunction, the acquisition of the private interests must be done by the executive branch of the Government.[3] The joint account established in the Land Acquisition and Deferred Payment Agreement shall remain in tact.[4]

ACCORDINGLY;

IT IS ORDERED:

1. The Marianas Public Land Corporation, its agents, employees, officers, and attorneys are permanently enjoined from disbursing any funds it received from the United States of America pursuant to the Lease Agreement

---

[3] Whether the executive branch wishes to designate MPLC as its agent to negotiate a settlement or whether the legislature wishes to expand the powers of MPLC are matters within the discretion of the executive and legislative branches. Additional thought may produce other viable (and legal) alternatives.

[4] This escrow account should be available for the payment of the private interests upon the proper certification of the executive branch for each zone referred to in the agreement. If the amounts reached by settlement or condemnation exceed the sums available, legislative appropriation would be needed.

executed on January 6, 1983 to any of the owners of private interests of land on Tinian Island. This injunction may be subsequently modified by the court should legislation or other legal means be formulated authorizing the Corporation to disburse funds.

2. Plaintiff's security deposit shall be remitted to her forthwith.

3. No attorney fees are allowed plaintiff.

4. The Marianas Public Land Corporation shall promptly transfer to the Marianas Public Land Trust the funds received for public lands from the United States of America and which are not deposited in the joint account pursuant to Articles 3, 4, and 5 of the January 6, 1983 Land Acquisition and Deferred Payment Agreement. Said sum is $26,434,200 plus any accrued interest thereon less the reasonable expenses of administration of the Marianas Public Land Corporation.

5. The joint account held by the United States and the Marianas Public Land Corporation shall remain under the provisions of Articles 4 and 5 of the Land Acquisition and Deferred Payment Agreement. As and when the provisions of Article 5c are met, the Corporation shall cooperate in the disbursal of the funds except that if the Corporation is not the proper recipient at the time of the disbursement, the check shall be made to the proper party as designated by the Executive Branch.

6. This court retains jurisdiction of this matter to resolve any questions which may arise as to the procedure to be followed in the withdrawal of the escrow account and matters related thereto.

Dated at Saipan, CM, this 28th day of December, 1983.

Robert A. Hefner, Chief Judge